IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Sarah Curry, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:13-cv-545 |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Deputy William Cotton, | : | Order Denying Motion for Summary |
| | : | Judgment and Motion to Strike |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 13)

and Defendant's Motion to Strike Plaintiff's Response to Proposed Undisputed Facts (Doc. 21).

In this case, Plaintiff Sarah Curry[1] asserts that Defendant Deputy William Cotton of the

Hamilton County, Ohio Sheriff's Office used excessive force against her in the early morning

hours of November 25, 2012.  For the reasons that follow, the Court will **DENY** the Motion for

Summary Judgment and the Motion to Strike.

I.      **BACKGROUND**

A.      **Relevant Facts**

The following facts are derived from Defendant's Proposed Undisputed Facts and

Plaintiff's Response thereto unless otherwise specifically noted.  (Doc. 13-1 at PageID 61–62;

Doc. 20 at PageID 375–77.)  As a preliminary matter, Deputy Cotton relies on police

investigative reports and surveillance videotapes to support his statement of facts.  Neither party

disputes the accuracy of the events captured on the surveillance videotapes so the tapes will be

---

[1] Counsel spells Plaintiff's first name as "Sarah" in the Complaint, but spells it as "Sara" in later pleadings.
(*Compare* Doc. 1 *with* Doc. 15 and Doc. 20.)  The Court will use the spelling "Sarah" to be consistent with the
CM/ECF case caption.

admitted as substantive evidence.  Police investigative reports also can be admitted as evidence pursuant to the public records exception to the hearsay rule:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (8) Public Records. A record or statement of a public office if:
>
> (A) it sets out:
>       (i) the office's activities;
>       (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>       (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803.

The Sixth Circuit has admitted an investigative report based in large part on interviews, and not based on the investigator's personal knowledge.  *Combs v. Wilkinson*, 315 F.3d 548, 554–56 (6th Cir. 2002).  This Court previously has admitted portions of a police investigative report, including the investigator's conclusions, pursuant to Rule 803(8), but has struck as hearsay the portions of the report summarizing witness statements to the investigator.  *Nowell v. City of Cincinnati*, No. 1:03cv859, 2006 WL 2619846, at *5, 7 (S.D. Ohio Sept. 12, 2006).  However, three witnesses in this case, Deputy Cotton, Deputy Roy Berry, and Kasey Igwegbe, averred in Affidavits that their interviews and written statements are true and accurate.  (Doc. 13-1 at PageID 183–92.)  Curry has not objected to the admissibility of the investigative report or witness statements.  She is not prejudiced by consideration of the investigative report or witness statements at the summary judgment stage because the Court will allow her case to proceed to

trial. The Court will admit the investigative reports as substantive evidence for purposes of this Order.

The events at issue in this case occurred in the overnight hours between November 24 and 25, 2012. Sarah Curry and her friend, Jesus Aleman, went to the Inner Circle Club on Kellogg Avenue in Hamilton County, Ohio that night. Curry was asked to leave the club and escorted outside by the club's head of security, Kasey Igwegbe, an African-American male, in the early morning hours of November 25, 2012. In the state criminal proceedings arising from these events, Curry admitted she was intoxicated on the night in question and was asked to leave after getting into a verbal altercation with three women. (Doc. 13-1 at PageID 111, 122–23, 127.)

Deputies Cotton and Berry of the Hamilton County Sheriff's Office, both African-American males, were working a private duty security detail at the Inner Circle Club parking lot on the night of the incident. Deputies Cotton and Berry were wearing their sheriff's uniforms. Curry and Aleman had a confrontation with Deputies Cotton and Berry right after they were escorted outside by Igwegbe. The immediate interactions between Deputy Cotton and Curry were captured on video surveillance cameras operated by the club. Later portions of the interactions occurred out of range of the club's surveillance cameras.

Igwegbe, Deputy Cotton, and Deputy Berry state that Curry directed racial slurs at Igwegbe as he escorted her out of the club and then at Deputy Cotton and Deputy Berry outside of the club. (Doc. 13-1 at PageID 187, 190; Doc. 14 Ex. 3.) Curry admits that she "swiped at" the deputies and became combative towards Deputy Cotton. (Doc. 13-1 at PageID 128.) Curry aggressively resisted arrest by hitting and kicking at Deputy Cotton. (Doc. 14 Ex. 2; Doc. 16 Ex. A.) Deputy Cotton used force to try to restrain Curry. (*Ids.*) The two engaged in an intermittent

physical struggle that lasted several minutes. Curry was forced to the ground, across a table, and against a railing during the physical struggle as she resisted Deputy Cotton. (*Id.*) Conversely, Deputy Berry more easily handcuffed Aleman, who appeared only to have argued with the deputies. The club surveillance video ends with Deputy Cotton forcibly escorting Curry into the parking lot towards her car. Curry was not in handcuffs and did not appear to be bleeding as she entered the parking lot. (*Ids.*)

Curry asserts that Deputy Cotton immediately cuffed her hands behind her back after he escorted her to the parking lot out of view of the surveillance cameras. (Doc. 15-1 at PageID 272.) She asserts that Deputy Cotton then "continued to beat [her] to the point [she] was bleeding profusely." (*Id.*) She states that Deputy Cotton struck the back of her arms with his baton after she was handcuffed. (*Id.*) Photographs taken after the incident show a laceration on Curry's forehead, blood on her head and neck, and dark bruising on the back of her arms. (*Id.* at PageID 279.)

Igwegbe, Deputy Cotton, and Deputy Berry contradict Curry's account. Deputy Berry and Igwegbe assert that Curry started fighting Deputy Cotton again in the parking lot when Deputy Cotton tried to cuff her. (Doc. 14 Exs. 5A, 7B.) Deputy Berry states that Curry became "irate" in the parking lot, kicked and yelled again, and struggled with Deputy Cotton until they both fell to the ground. (Doc. 13-1 at PageID 187.) Igwegbe states that Curry cut her forehead and started bleeding when she fell to the ground. (Doc. 14 Ex. 5A.) Deputy Cotton states that Curry resisted when he tried to place her in handcuffs, that they fell to the ground, and that she kicked and grabbed at him even after they fell to the ground. (Doc. 13-1 at PageID 73; Doc. 14 Ex. 6B.) Deputy Cotton states that he struck Curry twice in the ribs and once in the arms with his baton during their struggle. (Doc. 14 Ex. 6B.) Deputy Cotton, Deputy Berry, and Igwegbe

assert that Deputy Cotton required Deputy Berry's help to place Curry in handcuffs. (Doc. 13-1 at PageID 71–73; Doc. 14 Exs. 5A, 6B, 7B.) Igwegbe states that Deputy Cotton did not use force against Curry after she was placed in handcuffs. (Doc. 13-1 at PageID 71; Doc. 14 Ex. 5A.) Deputy Cotton also states that Curry refused to sit still on the ground after she was handcuffed, but that no other force was used against her. (Doc. 14 Ex. 6B.)

Surveillance camera videos from police cruisers which arrived at the scene after the incident show Curry scuffling around the ground in a seated position in the parking lot. Her hands are cuffed behind her back and she has blood on her forehead and face. (Doc. 14 Ex. 8B.) Curry was taken to the hospital to receive treatment for a head laceration. She received four stiches on her forehead. The emergency room records indicate that Curry "presented very belligerent and aggressive." (Doc. 13-1 at PageID 89.) She was placed in restraints and given pharmacologic sedation to calm her. (*Id.*)

## B. Procedural History

Curry was charged criminally with assault on a police officer, resisting arrest, and disorderly conduct while intoxicated. Curry pleaded guilty to a second degree misdemeanor for resisting arrest in the Hamilton County Common Pleas Court on April 10, 2013. (Doc. 13-1 at PageID 111, 116, 120–21.) She admitted to swiping at and being combative towards Deputy Cotton at the Inner City Club. (*Id.* at PageID 128.) In response to the judge's prodding, Curry apologized to Deputy Cotton at the court hearing and thanked him for agreeing to a lesser charge. (*Id.*) Aleman, Curry's friend, was found guilty of disorderly conduct while intoxicated for his actions at the Inner Circle Club.

On August 7, 2013, Curry filed a Complaint against Deputy Cotton in this Court. Curry asserts a claim pursuant to 42 U.S.C. § 1983 for a violation of the Fourth Amendment right to be

free from the use of excessive force and a claim for common law battery.  Defendant Deputy

Cotton now moves for summary judgment as to both claims.  Deputy Cotton also moves to strike

Curry's Response to Proposed Undisputed Facts.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has the burden of

showing that no genuine issues of material fact are in dispute.  *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663

F.3d 806, 811 (6th Cir. 2011).  The evidence, together with all inferences that can permissibly be

drawn therefrom, must be read in the light most favorable to the nonmoving party.  *See*

*Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof

or by exposing the lack of evidence on an issue for which the nonmoving party will bear the

burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  In responding to

a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go

beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

The Court's task is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  A genuine

issue for trial exists when there is sufficient "evidence on which the jury could reasonably find

for the plaintiff."  *Id.* at 252.  "The court need consider only the cited materials, but it may

consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

### III.    ANALYSIS OF SUMMARY JUDGMENT

Material disputed facts preclude summary judgment in this case.  Curry does not dispute at this stage in the proceedings that she initially resisted arrest and that Deputy Cotton had to use reasonable force to restrain her.  Instead, Curry has limited her claims for violations of the Fourth Amendment and common law battery to the allegations that Deputy Cotton used excessive force against her *after* he had physically restrained her by placing her in handcuffs.  (Doc. 15 at PageID 262–64, 266–67.)

### A.    Excessive Force Claim Pursuant to 42 U.S.C. § 1983

"Where, as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Deputy Cotton moves for summary judgment on the Fourth Amendment claim on the basis of qualified immunity.  The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity provides immunity from suit, not simply a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Courts apply a two-part test to determine if qualified immunity applies: (1) determine whether the facts alleged would establish that the government official's conduct violated a constitutional right and (2) determine whether the specific right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).  "Qualified

immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Pearson*, 555 U.S. at 232.

There is a "is a clearly established legal norm" in the Sixth Circuit "precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others."  *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009).  However, there is a genuine dispute of fact whether Deputy Cotton used violent physical force against Curry after she was physically restrained.  Deputy Cotton and Igwegbe both stated explicitly that Deputy Cotton did not use force after Curry was handcuffed.  Curry avers in her Affidavit that Deputy Cotton used force against her even after she was handcuffed.

Deputy Cotton urges the Court to disregard Curry's statement that he beat her after she was handcuffed.  He argues, in part, that Curry was too intoxicated to have a reliable memory of events.  Curry admits she was intoxicated, but her level of intoxication is not clearly established in the record.  Deputy Cotton points to a hospital record indicating that Curry's "[e]thanol level was 225," but he offers no evidence giving a layman's understanding of that ethanol level.  (Doc. 13-1 at PageID 94.)  He does not offer evidence to explain how an ethanol level would correspond to the more familiar terminology of blood alcohol concentration nor medical testimony about how that ethanol level would impact Curry's cognition.  The Court does not know if Deputy Cotton deposed Curry and attempted to impeach her recollection about the events surrounding her arrest, but neither party has submitted any deposition testimony in this case.

Deputy Cotton also analogizes this case to *Scott v. Harris*, 550 U.S. 372 (2007).  In *Scott*, the Supreme Court stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that [contradicted] version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Supreme Court in *Scott*, however, relied on objective videotape evidence which directly refuted one party's version of events. *Id.* The videotape evidence in this case does not directly refute Curry's statement.

No surveillance camera captured the relevant events here.  Curry had no visible bleeding injury when Deputy Cotton forcibly escorted her into the parking lot and out of range of the club's surveillance camera.  She had blood visible on her forehead and face when the police cruiser videotapes show her sitting handcuffed on the ground.  Thus, there is no objective videotape evidence of Deputy Cotton's actions after he handcuffed Curry or which explain how Curry sustained the injury to her head.  Rather, the Court is left with competing witness accounts.  It is not the Court's job at the summary judgment stage to make credibility determinations or weigh the evidence.  Rather, the Court must make all inferences in favor of the non-moving party.  The evidence is disputed whether Deputy Cotton used excessive force against Curry after she was handcuffed.  Accordingly, the Court will deny summary judgment to Deputy Cotton on the Fourth Amendment excessive force claim.

**B.      Battery Claim**

Curry's claim for common law battery is based on the same alleged conduct as the Fourth Amendment claim—Deputy Cotton's use of force against her after she had been physically restrained.  Battery is an "intentional, nonconsensual touching."  *Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003).  Deputy Cotton moves for the summary judgment on the basis of statutory immunity.

The Ohio Revised Code provides a general statutory immunity to employees of political subdivisions.  Ohio Rev. Code § 2744.03(A)(6).  An exception to that statutory immunity exists

when the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6)(b).  The genuine factual dispute regarding whether Deputy Cotton used excessive force on Curry after she was handcuffed precludes the Court from finding as a matter of law that Deputy Cotton is entitled to statutory immunity.  *See D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (finding that material disputed facts about an officer's alleged use of excessive force precluded summary judgment on an assault and battery claim); *Magrum v. Meinke*, 332 F. Supp. 2d 1071, 1084 (N.D. Ohio 2004) (same).  The Court will deny summary judgment to Deputy Cotton summary judgment on the battery claim.

## IV.     MOTION TO STRIKE RESPONSE TO PROPOSED UNDISPUTED FACTS

Pursuant to this Court's Standing Order on Civil Procedures, Deputy Cotton as the movant was required to file a statement of proposed undisputed facts supported by citations to the evidentiary record.  Curry was required to admit or deny each proposed undisputed fact and to support each denial with a citation to the evidentiary record.  Deputy Cotton properly filed a statement of proposed undisputed facts.  (Doc. 13-1 at PageID 61–62).  Plaintiff Curry filed a response, but she failed to support each denial with a citation to evidentiary record.  (Doc. 15-5.)

The purpose of the briefing requirement is to aid the Court in the efficient disposition of summary judgment motions.  The Court requested Curry's counsel to file a revised response to Defendant's Proposed Undisputed Facts which complied with the Standing Order on Civil Procedures.  The Court understood that defense counsel was informed about the Court's request to Curry's counsel.  Curry complied with the request by filing a revised Response to Undisputed Facts.  (Doc. 20.)

The Court will not strike the revised Response to Proposed Undisputed Facts because Deputy Cotton has not been prejudiced by its submission.  Curry relies on her Affidavit, the surveillance videos, and photographs of her injuries to support her denials of the Deputy Cotton's proposed statement of facts.[2]  Curry previously cited to this evidence in her brief opposing the summary judgment motion.  Deputy Cotton does not identify any respect in which the revised Response is inconsistent with the arguments Curry made in her previous summary judgment filings.  The Court's analysis of the pending Motion for Summary Judgment was not altered by consideration of the revised Response to Proposed Undisputed Facts.  Accordingly, the Court will deny the Motion to Strike.

## V.        CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 13) and Motion to Strike (Doc. 21) are **DENIED**.

IT IS SO ORDERED.


S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

---

[2]  The Court notes for the record that the Court did not analyze or consider the exhibits filed by Curry at CM/ECF Doc. 18.  The exhibits concern alleged prior bad acts by Deputy Cotton.  Curry offers this evidence to establish that Deputy Cotton, in her words, "has been the aggressor in similar situations and responds with aggression and force at the slightest provocation." (Doc. 15 at PageID 261–62.)  Curry's evidence is not admissible for the purpose for which it is offered.  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).